McBride, judge.
Before dawn on March 24, 1957, Kearney Jacob, aged 17 years, a guest passenger in the automobile of his older brother, Nolan Jacob, came to his death as a result of a head-on collision between the car in which he was riding and another automobile on U. S. Highway 61 about 500 feet north of the State vehicular weighing station situated just south of LaPlace, St. John the Baptist Parish, and this suit is brought by the father of the deceased boy under LSA-C.C. art. 2315 against the liability insurer of Nolan Jacob’s car for damages in the sum of $5,000, the limit of liability under the contract of insurance, and the matter now reaches us on the appeal of plaintiff from a judgment dismissing the suit after a trial below.
The highway at the locus in quo is bisected by a concrete neutral ground 5 inches high and about 4 feet wide, on each side of which is a concrete roadway, each containing two lanes for vehicular traffic, one roadway being dedicated to traffic traveling northward or toward Baton Rouge and the other accommodating traffic moving southward, or toward New Orleans. Nolan Jacob’s car, which he was driving in a southerly direction on his proper roadway at a speed of about 50 miles per hour in the lane adjacent to the neutral ground, collided head-on with terrific force with the automobile of a colored man whose identity *433 is not revealed by the record, and as a result young Kearney received his fatal injuries. The automobile with which the Jacob'vehicle came into contact was traveling toward the north or Baton Rouge on the wrong roadway in the same lane in which Jacob was moving southward. This other car should have been on the opposite side of the neutral ground in the northbound portion of the highway.
The testimony concerning the collision was supplied by Nolan Jacob and a State police officer named Villarrubia. There is no other evidence tending to bear on the question of liability, and it may be now stated that the officer’s statements are only pertinent insofar as they establish the point in the highway at which the impact took place and the position of the cars after the accident.
Plaintiff charges Nolan Jacob with the following specifications of negligence:
“A) In using the down fast lane of traffic, which is the passing lane, instead of using the slow lane; and
“B) In operating said vehicle at an excessive rate of speed under the weather and road conditions then and there existing.
"C) In failing to maintain a proper lookout and failing to keep his automobile under proper control, so as to prevent said accident.
“D) That he saw, or should have seen, the vehicle that was traveling toward him dead ahead in the same lane of traffic.
“E) That in failing to see the vehicle, if he did fail to see it at a time he should have seen it, or, if he did see the approaching vehicle after his peril was discovered, then and in that event, he failed to use all the means and appliances at hand to prevent said accident.
“F) In failing to keep to his proper lane, in failing to have his automobile under proper control and maintaining a sharp lookout, he failed to act as a reasonable prudent person would and should have done under similar circumstances; All in violation of the Highway Regulatory Acts of the State of Louisiana, as amended.”
Defendant makes categorical denial: thereof.
We shall consider each of the charges in; proper order.
A. Nolan Jacob gives a most plausible- and acceptable explanation as to the reason he was driving in the fast lane next to the-neutral ground instead of using the outside- or slow lane. He maintains that a short, distance before reaching the point of impact he had passed another automobile going in the same direction, and to do so, of' course, he made the passage to the left of' this car or in the lane next to the neutral' ground, and that as he was then in close proximity to the weighing station and. feared a truck might make egress therefrom onto the highway, he decided to continue onward in the fast lane until he had passed the scale house before returning to-the outer lane.
B. There is no evidence to the effect the Jacob car was operated at more than SO miles per hour, which is entirely within the legal speed limit. The weather and road, conditions were not such as to call for a slower speed as no rain fell until after the accident, the roadway being completely-dry when the crash came.
C. There is nothing going to show that-Nolan Jacob was not maintaining a proper lookout or that he was in any wise derelict in keeping his automobile under proper control.
D. Jacob stated his headlights illuminated the roadbed for a distance forward of about 100 feet, and his testimony does not *434 show he could have seen the other car at any greater distance. He intimated very strongly several times that the headlights on the oncoming car were not illuminated. For instance, on page 12 of the testimony he said: “I have to say that I think the man had his lights off.” Asked if he did not see the other vehicle before the accident occurred, he answered:
“I didn’t see the car. All of a sudden I seen, I saw two lights. That was it.”
When questioned as to how far away these two lights were when he first saw them, he stated:
“Well, I can estimate; looked like he was right on top of me; from the time I seen those lights it wasn’t but a split second. He was right on top of me. In other words, it just happened like that. (Witness snapped his fingers). It happened just like that.”
Considering the import of his testimony as a whole, we conclude Jacob did not see the oncoming car sooner because it was being operated without lights and the driver suddenly switched on his lights when in close proximity to Jacob’s car.
It seems strange 'that plaintiff was content to rely on his son’s testimony under cross-examination and made no attempt to present any other testimony except that of the officer to prove negligence. It occurs to us he might have summoned the driver of the other car or the passengers therein as witnesses on his behalf. If the other driver was traveling with proper lights, he was the one in the best position to know thereof, and he certainly could have so testified. From what we have before us, our firm conclusion is that the lights of the other car were suddenly switched on just moments before the collision took place.
In support of their contention Nolan Jacob must have observed the oncoming car much sooner than he says he did, plaintiff’s counsel point to that testimony given by Villarrubia to the effect that shortly after the accident Nolan told him that he had seen the headlights of the other car a considerable distance away but that he mistakenly thought the car was in the other or northbound roadway. However, we do not accord any significance to such testimony because the officer admitted his written report of the accident does not recite that Jacob had made such a statement and that he was testifying entirely from memory. Jacob sustained a head injury and Villarrubia described him as having been very excited and “gave us quite a time,” and:
“ * * * We were trying to take care of him, and keep him away from that oncoming traffic and away from that dirty water in the swamp.”
Besides having been injured Jacob was under great stress because of his younger brother’s condition. Under these circumstances even if it be true the statement attributed to Nolan was made, we do not think it emanated from a person having the ability to think clearly.
E. Jacob’s testimony is convincing that when the lights suddenly appeared in front of him it was far too late to use any means or appliances available to him to prevent the accident. Assuming he observed the oncoming car in the beams of his headlights 100 feet away, which was the maximum distance he could see, his own car was traveling SO miles per hour and it cannot be doubted the other car was traveling at least that speed, thus making the combined speeds of the two vehicles at least 100 miles per hour, the distance covered by both cars being practically ISO feet per second. Therefore, less than a second elapsed between the time Jacob could observe the other car and the moment of the impact.
*435 F. Our previous discussions would apply to the charges contained in this specification.
The plaintiff utterly failed to make out his case with that degree of certainty the law requires. It was incumbent upon him to show that Nolan was guilty of some negligent act of commission or omission which would constitute a proximate cause of the accident, and after carefully analyzing what testimony we have in the record, we are of the opinion there is no semblance of any such showing.
The judgment appealed from is affirmed.
Affirmed.